(No. 5270.    January 13, 1930.)

J. C. WEETER, Appellant, v. R. A. REYNOLDS and C. L. REYNOLDS, Individually and as Copartners, Doing Business Under the Firm Name and Style of REYNOLDS BROS. CO., REYNOLDS AUTOMOBILE CO., and REO SALES COMPANY, Respondents.

[284 Pac. 257.]

Bothwell & Chapman, for Appellant.

W. D. Gillis, for Respondents.

614

BUDGE, J.—This action was instituted by appellant, as assignee, to recover the purchase price of an automobile sold and delivered to respondents by the Weeter Motor Company in September, 1926.

Under the terms of a contract, dated February 12, 1926, entered into with the Weeter Motor Company, therein denominated the ''distributor'' and hereinafter referred to as such, respondents became ''dealer'' for ''new Reo motor vehicles of current models and parts therefor.'' The contract provided, *inter alia*, that the dealer be allowed, in addition to a discount of twenty per cent from the list price of vehicles purchased, an additional discount of four per cent provided the dealer attained ''a volume of 25 units within one year from date.'' In a cross-complaint filed by them respondents claimed an amount due under the four per cent discount clause of the contract, as well as a sum for tire replacements made by them on an automobile purchased under the contract.

The cause was tried to a jury by which a verdict was returned finding in effect that appellant was entitled to a recovery for the price of the automobile sold and delivered to respondents, and that respondents were entitled to off-sets under their cross-complaint, the amount of which, deducted from that found for appellant, left a balance in appellant's favor of $83.29. The appeal is prosecuted by appellant from the judgment entered on the verdict.

■ In so far as a consideration of the written contract is involved, it is not open to serious question that the parties intended it to cover a period of one year from February 12, 1926. The contract was prepared from a printed form, and the particular provisions governing the parties written in on a typewriter. It is from the typewritten portion that it clearly appears the contract was to be in operation for one year from its date. Under C. S., sec. 5669, the written parts control the printed parts, and the latter must so far be disregarded.

■ Appellant contends that the allegations in respondents' cross-complaint do not meet the requirements of C. S., sec. 6699, whereby it is provided that a cross-complaint may be filed "whenever the defendant seeks affirmative relief against any party, relating to or depending upon the contract or transaction upon which the action is brought, or affecting the property to which the action relates. The automobile, to recover the purchase price of which appellant brought the action, was sold to respondents under the "dealer's agreement" by the terms of which respondents claimed they were entitled to the offsets forming the basis of their recovery; that is to say, the purchase price of the automobile was due by reason of its sale to respondents under the contract entered into between the distributor and respondents, and the discount claimed by respondents in their cross-complaint was provided for in the contract; also, the amount claimed by respondents for tires and equipment represented expenditures made by them on a truck purchased under that contract. The averments of respondents' cross-complaint forming the basis of their recovery related

to or depended upon the contract, within the meaning of C. S., sec. 6699, and we are of the opinion that the evidence in support thereof is sufficient to sustain the finding of the jury with reference thereto.

Some three months before the contract between respondents and the distributor would have expired, respondents had purchased from within one to four units of the twenty-five referred to in the contract, when they were advised by the distributor that the manufacturer had canceled its contract with the distributor, and that the distributor was "discontinuing the handling of the Reo line." In view of this information, it was unnecessary for respondents to make further demand for performance by the distributor. (13 C. J. 661, sec. 744; *Elson v. Jones,* 42 Ida. 349, 354, 245 Pac. 95.) The distributor agreed to "sell to the dealer f. o. b. Lansing, Michigan, new Reo motor vehicles of current models." Respondents were not confined to a selection of vehicles from among those the distributor had on hand, and by reason of the cancelation of the contract between the manufacturer and the distributor, the distributor was not in a position thereafter to comply with the provision of its contract with respondents above quoted.

To be sure, the contract between the distributor and respondents contained a provision to the effect that it was subject to the terms and conditions of the agreement between the manufacturer and the distributor. But it does not follow that by reason of the cancelation of the contract last mentioned, respondents would be precluded from recovering a proportionate amount of discount based on the number of units they had purchased before their contract with the distributor was canceled.

"The very idea of rescinding a contract implies that what has been parted with shall be restored on both sides. That one party should be released from his part of the agreement, and that he should be excused from making the other party whole, does not seem agreeable to reason or justice. Hence the general rule is that a party who rescinds an

agreement must place the opposite party *in statu quo.* Accordingly, where one party to a contract has received and retained the benefits of a substantial partial performance of the agreement by the other party, who has failed completely to fulfill all his covenants, the first party cannot retain the benefits and repudiate the burdens of the contract, but he is bound to perform his part of the agreement. . . . . '' (6 R. C. L., pp. 936, 937, sec. 319.)

It is well settled that, where one party repudiates a contract and refuses longer to be bound by it, one of the remedies of the other party is to treat the contract as rescinded, and recover upon *quantum meruit* so far as he has performed. (6 R. C. L., p. 1032, sec. 389; 13 C. J., p. 615, sec. 668; *Bowman v. Ayers,* 2 Ida. 465, 21 Pac. 405; *Spaulding v. Coeur d'Alene Ry. Co.,* 5 Ida. 528, 51 Pac. 408.) After breach of a contract has given rise to a cause of action, the rights of the innocent party are not affected by an offer to perform by the party who has broken the contract. (6 R. C. L., p. 1021, sec. 381.)

It is apparent from the face of the contract between the distributors and respondents that the discount of four per cent was a special inducement to the latter. It must have been within the contemplation of the distributor that if at the end of the year's period respondents had purchased the number of units stipulated, it would have been liable for the discount. The extent of liability in such case being provided for, it is not too much to hold the promisor under its promise to the extent the promisee was permitted to perform. It certainly would not be fair to allow the distributor to benefit to the extent of respondents' performance without remunerating them on the basis agreed, upon a pretense that they did not fully perform, when their failure to complete performance was attributable to the cancelation of the contract, in nowise the fault of respondents.

Respondents' recovery is not found to be in contravention of any sound legal principle, and, the substance of appellant's assignments of error having been covered, it fol-

lows that the judgment should be affirmed. It is so ordered. Costs to respondents.

Givens, C. J., and T. Bailey Lee and Varian, JJ., concur.